IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

SHIRLEY WHITE, as Wrongful Death
Beneficiary of KEITH PERKINS, DECEASED                                              PLAINTIFF

v.                                                                       NO. 2:09-CV-00161-GHD-JMV

WEXFORD HEALTH SOURCES, INC.,
and TUNICA COUNTY, MISSISSIPPI                                                     DEFENDANTS

## MEMORANDUM OPINION

### A. Introduction

This matter is before the Court on Defendant Wexford Health Sources, Inc.'s motion [34] for immunity from state tort liability under the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq.* ("MTCA"), and for corresponding partial summary judgment. The issue is whether Wexford Health Sources, Inc., a private, for-profit corporation, which has contracted with the Mississippi Department of Corrections ("MDOC") to provide medical services at a state prison facility, is entitled to immunity from state law medical negligence claims asserted by inmates.

Defendant Wexford Health Sources, Inc. ("Defendant" or "Wexford")) in support of the motion, asserts it is a "political subdivision" of the State of Mississippi under the MTCA because it is a "corporate body" performing, pursuant to contract, the governmental function of providing medical care to state inmates. Wexford argues that as a political subdivison of the State, it is entitled to immunity pursuant to Mississippi Code Annotated § 11-46-9(m), which relieves the State, its political subdivisions, and their employees of liability for state law claims for injuries under the circumstances at issue here.[1]

---

[1] Section 11-46-9 states in pertinent part:

Governmental entities and employees; exemption from liability

Plaintiff Shirley White ("Plaintiff") on the other hand, argues that the instant motion is "frivolous," asserting that "[b]y definition a private corporation, such as Wexford, which has a contract with a state, is not itself a "state" or a "political subdivision of a state [within the meaning of the MTCA]." Pl.'s Br. Opp. to Def. Wexford's Mot. Immunity & Partial Summ. J. [46] at 1.

For the reasons discussed below, the Court finds that although Plaintiff is mistaken in the blanket assertion that a private corporation having a contract with the State of Mississippi cannot, by virtue thereof, ever be deemed a political subdivision of the State within the meaning of the MTCA, under the particular circumstances of this case, and in view of controlling law from both the Mississippi Supreme Court and federal district courts of Mississippi, Wexford is not immune from suit as a political subdivision of the State under the MTCA.

Before moving forward, however, the Court notes that on December 22, 2011, Plaintiff filed a motion for leave [65] to submit supplemental briefing in opposition to Wexford's motion for immunity and partial summary judgment. Specifically, Plaintiff points out that an issue arose during a settlement conference with the court on December 13, 2011. In her proposed supplemental brief, Plaintiff indicates that during that settlement conference, Wexford took the position that Plaintiff did not have a federal constitutional claim against Wexford. Nevertheless, Plaintiff goes on to

---

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . . .

(m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;

. . . .

2

acknowledge that Wexford's motion for immunity and partial summary judgment "soley addressed Plaintiff's state law claims against Wexford, and Wexford's claim of immunity under the Mississippi Tort Claims Act, § 11-46-1, et seq." and that "Wexford did not attempt to address Plaintiff's federal claims in its motion." Because the issues raised by Plaintiff's proposed supplemental brief have no bearing on Wexford's motion for immunity and corresponding partial summary judgment, the Court finds that Plaintiff's motion for leave to submit supplemental briefing [65] should be denied.

## B. *Factual Background*

Plaintiff is asserting claims for the alleged wrongful death of her brother, Keith Perkins. At the time of Mr. Perkins' death, he was a prison inmate. Initially, Perkins was incarcerated at Tunica County Detention Facility, but he was subsequently transported to Central Mississippi Correctional Facility in Rankin County, Mississippi on June 12, 2008. He remained there until June 16, 2008, when he was transported by ambulance to Central Mississippi Medical Center in Jackson, Mississippi. Perkins died in that hospital approximately three days later. This action arises out of the injuries suffered by Perkins and his ultimate death due to the alleged negligent rendition of medical care by certain medical staff employed by Wexford, a private, for-profit, health care corporation responsible for the provision of medical services at the subject prison pursuant to its contract with the State of Mississippi.

In her complaint, Plaintiff alleges Wexford committed various negligent acts and omissions which proximately caused or contributed to her brother's death. Wexford is a private Florida corporation that provides certain medical, dental, and mental health services to prison inmates at particular facilities in the State of Mississippi. The types of services provided by Wexford, along with the facilities it serves, are specified in its contract with the Mississippi Department of

Corrections ("MDOC").[2] Ultimately, Wexford provides those services at some but not all of the correctional facilities at which MDOC inmates are housed.

The contract between Wexford and MDOC further reveals that when it comes to providing inmates with medical, dental, and mental health care and to making related decisions, there is a certain division of labor which exists between Wexford and MDOC, and under that division of labor, MDOC exercises authority over some important matters. For example, MDOC retains the right to approve key Wexford personnel, such as medical directors, physicians, mid-level practitioners, and nursing directors. MDOC also establishes, through appropriate arrangements, the particular off-site medical centers which will be used for emergencies that cannot be treated on-site at a prison. Additionally, MDOC makes the final decisions regarding specialty referrals. Notwithstanding this level of control exercised by the MDOC, however, the contract expressly defines Wexford as an independent contractor and denies MDOC any right to exercise control over the "method" or "manner" by which Wexford performs its duties under the contract.

### C. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing

---

[2] *See* "Agreement Between the State of Mississippi Department of Corrections and Wexford Health Sources, Inc. for Onsite Inmate Health Services," attached as an exhibit to Lynda Powell's Summary Judgment Affidavit [34-2].

4

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1985).

*D. Discussion*

In support of its motion, Wexford asserts that the issue here has never been decided by the Mississippi Supreme Court, nor is there other controlling authority specifically addressing the issue. Consequently, rather than controlling case law, Wexford relies in support of its claim primarily on the following arguments:

1. As a private corporation performing medical services to state prisoners pursuant to contract with the MDOC, Wexford fits the definition of a "political subdivision" as

5

that phrase is defined under § 11-46-1(i) of the MTCA;[3]

2. Although § 11-46-1(f) of the MTCA is not actually "directly" applicable to Wexford in this case, the language of that section, nevertheless, sheds light on the issue of whether Wexford is entitled to immunity under the MTCA, since that provision evidences a general intent of the Mississippi Legislature to extend immunity under the Act broadly to cover all health care providers affiliated with governmental entities;[4]

---

[3] Section 11-46-1 states in pertinent part:

§ 11-46-1. Definitions

As used in this chapter the following terms shall have the meanings herein ascribed unless the context otherwise requires:

. . . .

(g) "Governmental entity" means and includes the state and political subdivisions as herein defined.

. . . .

(i) "Political subdivision" means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, community hospital as defined in Section 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

. . . .

[4] Subdivision "f" of § 11-46-1 defines "employee" this way:

"Employee" means any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation. The term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the state or a political subdivision; provided, however, that for purposes of the limits of liability provided for in Section 11-46-15, the term "employee" shall include physicians under contract to provide health services with the State Board of Health, the State Board of Mental Health or any county or municipal jail facility while rendering services

6

3. Because the MTCA specifically grants immunity to those who provide medical services in county and municipal jails, it would be "exceedingly strange" to deny those same immunities to those providing health care services in state facilities; and

4. Since, for purposes of a 28 U.S.C. § 1983 action, Wexford would be deemed a "state actor," it, therefore, should be deemed a "political subdivision" of the State under the MTCA and provided immunity as to state law claims.

The Court finds that none of Wexford's arguments is persuasive. First, though not cited by either party, the issue of whether a private, for-profit corporation, such a Wexford, performing services on behalf of a governmental entity is entitled to the protections of the MTCA was addressed in *Thompson v. McDonald Transit Associates, Inc.*, 440 F. Supp. 2d 530 (S.D. Miss. 2006). In that case, the City of Jackson contracted with the defendant, McDonald Transit Associates, Inc. ("McDonald"), a private, for-profit, Texas corporation, to operate and maintain the City's public transportation system. *Thompson*, 440 F. Supp. 2d at 530–31. Discovery in the case revealed that McDonald was paid a flat fee for its services and reimbursed its operating expenses out of revenues paid the City by the public using the transportation system. *Id.* at 531. The City, for its part, retained substantial oversight of the operation of the public transport system and furnished all equipment and

---

under such contract. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the University of Mississippi Medical Center (UMMC) and its departmental practice plans who is a faculty member and provides health care services only for patients at UMMC or its affiliated practice sites. The term "employee" shall also include any physician, dentist or other health care practitioner employed by any university under the control of the Board of Trustees of State Institutions of Higher Learning who practices only on the campus of any university under the control of the Board of Trustees of State Institutions of Higher Learning. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the State Veterans Affairs Board and who provides health care services for patients for the State Veterans Affairs Board. The term "employee" shall also include Mississippi Department of Human Services licensed foster parents for the limited purposes of coverage under the Tort Claims Act as provided in Section 11-46-8.

approved all budgets and contracts related to its operation. *Id.*

In the course of the system's operations, a passenger was injured and sued McDonald, the operator, for negligence. *Id.* at 530–31. McDonald essentially argued it was entitled to the same protections as the City under the MTCA because it was performing a "government activity" by its operation of the transport system under contract with the City. *Id.* at 532. Like Wexford in the instant case, McDonald argued it met the literal definition of "political subdivision" as defined in the MTCA, and was, therefore, entitled to immunity under the statute. *See id.*

Recognizing–at the time–a "scarce amount of Mississippi case law regarding application of the MTCA to private companies," U.S. District Judge William H. Barbour noted that the Mississippi Supreme Court had considered the application of the MTCA to at least one private, for-profit entity, citing *Mozingo v. Scharf*, 828 So. 2d 1246 (Miss. 2002). *Id.* at 532. The court explained that in that case the Mississippi Supreme Court found that a private, for-profit, legal entity did not function as a private entity, but rather as a "political subdivision" of the "State" for purposes of the MTCA. *Id.* at 532-533. The court noted that the Mississippi Supreme Court considered as significant the following circumstances: (1) that the entity, though private, was created by the State to carry out the mandate of the State Legislature to provide the medical services to the public; (2) that the sole purpose of its creation was to bill and collect fees for the state hospital; (3) that its only members were the state hospital physicians who were required to practice exclusively at the state hospital; and (4) that the entity was bound by the state hospital guidelines. *Id.* at 533.

Applying those factors to McDonald, the private, for-profit, Texas corporation involved in *Thompson*, Judge Barbour found little similarity between the private entity in *Mozingo* and McDonald. *Id.* McDonald had not been created for the sole purpose of fulfilling a state-mandated

government service, but had, instead, presumably been created to be a profitable business for the benefit of its shareholders. *Id.* Moreover, Judge Barbour noted that operation of the public transport system was unlikely McDonald's sole purpose for existence. *Id.* The court explained:

> Considering McDonald is a Texas corporation, the Court presumes that McDonald is involved in other ventures in other states. This capitalistic nature is an overriding consideration that clearly distinguishes McDonald from an entity such as UAS [the private entity at issue in *Mozingo*] which merely exists to supplement the salary of UMMC faculty-physicians.
>
> McDonald also points out that the City has significant control over JATRAN [the public transport system] and that the City receives all revenue generated by JATRAN. But, McDonald overlooks the fact that it maintains ultimate control over the day-to-day operations of JATRAN, as the general manager of the transit system is a McDonald employee. Also, the City's receipt of revenues is of little significance considering McDonald receives a yearly fee from the City for its services.
>
> After considering the overall nature of the contractual relationship between the City and McDonald, the Court believes that the Mississippi legislature [sic] did not intend for the MTCA to extend to a private entity such as McDonald. The Court therefore concludes that McDonald is not protected by the MTCA.

*Id.*

Not long after the *Thompson* decision, the Mississippi Supreme Court considered a similar issue as it had in *Mozingo* and again concluded that while it was possible for a private entity responsible for governmental activities to properly be regarded as a political subdivision pursuant to the MTCA, there were limits on such circumstances. In *Bolivar Leflore Medical Alliance, LLP v. Williams*, 938 So. 2d 1222, 1228 (Miss. 2002), the court highlighted the circumstances that supported its holding in *Watts v. Tsang*, 828 So. 2d 785 (Miss. 2002). Quoting *Watts*, the court stated:

> we are *not* holding that all . . . [such legal entities] are per se instrumentalities of the State. However, where as here the medical practice group was created by UMMC, and is overseen by UMMC, and the purpose is to supplement the income of its faculty; when the day-to-day oversight is left to the department chair, subject to

9

> limited oversight by the vice chancellor, and its membership is composed solely of full-time UMMC faculty physicians; where the faculty physicians can only practice at UMMC approved sites, and the money is distributed on a point system based on factors other than mere patient service, we must conclude that the medical practice group is a State entity.

*Bolivar Leflore Medical*, 938 So. 2d at 1228 (citation omitted).

Ultimately, the *Bolivar Leflore Medical* court found that the particular entity at issue in that case was entitled to the protections, limitations, and immunities of the MTCA because of Greenwood Leflore Hospital's[5] nearly total interest in the income and losses of the subject entity, and its majority control over the entity's Executive Committee membership. *See id.* at 1229–1232.

Four years after Judge Barbour's decision in *Thompson*, U.S. District Judge David Bramlette analyzed a similar issue. In *Natchez Regional Medical Center v. Quorum Health Resources LLC*, No. 5:09-cv-207-DCB-JMR, 2010 WL 3324955 (S.D. Miss. Aug. 20, 2010), QHR, a private entity contracting with a community hospital, argued it was entitled to the protections, limitations, and immunities of the MTCA. The court pointed out that QHR's position was "analogous to the position of McDonald Transit Associates, Inc. in *Thompson*." *Natchez Regional*, 2010 WL 3324955, at *4. Ultimately, the *Natchez Regional* court concluded that "QHR is not entitled to the protections, limitations, and immunities of the MTCA." *Id.* The court found it important to note that "QHR is a Delaware company with its principal place of business in Tennessee and, presumably, has capitalistic ventures elsewhere." *Id.* However, the court also found that while the Mississippi Supreme Court in *Estate of Fredrick ex rel. Sykes v. Quorum Health Resources, Inc.*, 45 So. 3d 667 (Miss. Ct. App. 2009), *rev'd on other grounds*, 45 So. 3d 641 (Miss. 2010), had earlier determined that QHR was an instrumentality of the State in that case, the findings in *Sykes* were not applicable

---

[5] Greenwood Leflore Hospital was a public community hospital.

to the facts in *Natchez Regional*, because in *Natchez Regional* QHR was being sued by a community hospital and not by a private entity, and the *Sykes* court had specifically limited its holding to the facts in that case. *See Natchez Regional*, 2010 WL 3324955, at *4 (citation omitted).

The holding in *Sykes* is worth further discussion, however. In that case, the Mississippi Supreme Court found that a review of the management agreement between QHR, a for-profit, Delaware corporation, and the governmental entity, a community hospital, revealed that QHR was an instrumentality of the hospital. *Sykes*, 45 So. 3d at 674. Most importantly, the agreement made it clear that the hospital did not "abdicate any of its control or authority over its operation or its business." *Id.* The agreement expressly stated that the relationship between the hospital and QHR was one of principal and agent and that the hospital and QHR were "*not* partners, joint venturers, or *independent contractors* . . . . *Id.* at 675 (emphasis added). The court pointed out that

> [a]lthough . . . [QHR] is a subsidiary of one of the largest hospital corporations in the United States, considering the foregoing provisions of the management agreement, it is clear that under the precise circumstances of this case and context of the relationship between . . . [QHR] and . . . [the hospital], there is no genuine issue of material fact regarding whether . . . [QHR] is an 'instrumentality' of . . . [the hospital]. As an 'instrumentality' of a community hospital, . . . [QHR] is entitled to the protections, limitations[,] and immunities of the MTCA.'

*Id.* (citations omitted).

When the reasoning of the foregoing cases is applied to Wexford here, it is apparent that Wexford is not entitled to immunity under the MTCA. Wexford is a private, for-profit, foreign corporation with business interests presumably other than those at issue here. Moreover, although there is some oversight by the MDOC pursuant to its contract with Wexford, both the contract and Wexford expressly define Wexford as an independent contractor. Significantly, the relevant section of the Agreement between MDOC and Wexford states:

11

> 11.6 **Independent Contractor Status.** The MDOC expressly acknowledges that Wexford is an "independent contractor," and nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the MDOC to exercise control or direction over the manner or method by which Wexford or its subcontractors perform hereunder. As such Wexford shall pay all federal, state, and local taxes that accrue to it because of this Agreement.

MDOC/Wexford Agt., Ex. to Lynda Powell Summ. J. Aff [34-2], at 34.

With regard to this latter point, the Court notes that though Wexford contends that Mississippi Code Annotated § 11-46-1(f) is not applicable to the instant case, it nevertheless asserts that the language of that particular section indicates an intent by the Mississippi Legislature to cast a broad sweep of immunity among those providing health care services as affiliates of the State. This argument is unpersuasive. Indeed, concerning § 11-46-1(f), while the Legislature cloaks *employees* of the State who provide health care services to the public with immunity, it expressly excludes *independent contractors* providing such services. In other words, according to this section of the MTCA, a principal focus in determining who is entitled to immunity turns on the recognized control factors which distinguish between independent contractors and employees. The factors referenced by the Mississippi Supreme Court in *Mozingo* and later by the Southern District of Mississippi in *Thompson and Natchez Regional* similarly rely on related control factors. Thus, far from supporting Wexford's argument of immunity, § 11-46-1(f) actually undermines it.

Next, the Court concludes that similarly without merit is Wexford's assertion that a finding of no immunity under the circumstances of this case would be "strange" in view of the fact that health care providers under contract with municipalities and county jails are entitled to immunity. The section of the MTCA Wexford refers to expressly limits that provision of immunity to the individual physicians themselves who provide medical care to municipalities and counties. It does

not address the provision of such care by private, for-profit corporations like Wexford in this case.

Finally, the Court finds Wexford's argument that it is entitled to the benefits and protections of the MTCA because it would be considered a "state actor" for purposes of a § 1983 claim avails it nothing. First, and foremost, Wexford has presented the Court with no legal authority remotely supporting this position. Second, as shown above, the MTCA itself defines those "governmental entities" and their "employees" entitled to its protections, limitations, and immunities; Wexford has failed to convince this Court that it fits into either category. Third, Wexford attempts to compare apples to oranges as § 1983 contemplates claims reaching federal constitutional magnitude, worlds apart from the state law negligence claims at issue here. Ultimately, Wexford is simply not entitled to immunity from suit under the MTCA.

*E. Conclusion*

For the foregoing reasons, Defendant Wexford Health Sources, Inc. is not entitled to immunity under the MTCA, and, therefore, its motion for immunity and corresponding partial summary judgment [34] shall be DENIED.

Further, Plaintiff's motion for leave to file supplemental brief in opposition to Wexford's motion for immunity and for a corresponding partial summary judgment [65] shall be DENIED.

A separate order shall issue this day in accordance therewith.

THIS, 21st day of June, 2012.

_____
SENIOR JUDGE